IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CR-326-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>CARLOS FERNANDO BARNES, )<br>)<br>Defendant. ) | ORDER |

This matter comes before the court on defendant's motion to suppress (DE 22). Pursuant to 28 U.S.C. § 636(b)(1)(B), a magistrate judge entered memorandum and recommendation ("M&R") wherein it is recommended that the court deny the motion (DE 38). Defendant objected, and the government responded. In this posture, the issues raised are ripe for ruling. For the reasons set forth below, the court denies defendant's motion to suppress.

## STATEMENT OF THE CASE

Indictment filed October 24, 2017, charges defendant with 1) possession of a firearm by a convicted felon; 2) possession with intent to distribute a quantity of cocaine; 3) possession of a firearm in furtherance of a drug trafficking crime; and 4) maintaining a dwelling for the purpose of storing cocaine.

On April 10, 2018, defendant filed the instant motion to suppress evidence found in two rooms in his apartment located at 2103 Barrington Manor, Apartment 101, in Raleigh, North Carolina, during a search by Raleigh Police Department officers on April 6, 2017. In particular, defendant moves to suppress all evidence seized from "bedroom 2" of his apartment, which he refers to as his "private office," including the following items:

1) ammunition;

2) Smith & Wesson 9MM pistol;

3) Mossberg Rifle .22 caliber;

4) Body Armor;

5) 8.9 grams cocaine;

6) $12,928.00 in currency; and

7) Documents showing defendant's name and address.

(See Motion to Suppress (DE 22) at 6, 16). In addition, defendant moves to suppress all evidence seized from the kitchen of his apartment, including the following items:

1) 53 grams cocaine;

2) Digital scale and containers with white powder residue;

3) Packaging.

(See id. at 7, 16). Defendant argues that the search violated defendant's Fourth Amendment rights because consent given by defendant's wife, Hadijatou Bah ("Bah"), who was present at the time of the search, was given under duress and did not extend to locations where evidence was found.

In support of the instant motion, defendant relies upon 1) police reports of officers Steve Kopcsak ("Kopcsak"), Bryan McCullers ("McCullers"), and B. Bizub ("Bizub"); 2) transcript of detention hearing held November 7, 2017; 3) floor plan of defendant's apartment; 4) a "certificate of assumed name for a sole proprietorship, partnership, limited partnership" owned by defendant; 5) a Raleigh Police Department "Consent Search" form signed by Bah on the date of the search (hereinafter, the "Consent Form").

The government responded in opposition to the instant motion on May 3, 2018, relying on: 1) excerpts of grand jury testimony by Bah; 2) a lease to the apartment located at 2103 Barrington Manor, Apartment 101, executed by Bah (hereinafter the "Lease"); and 3) a copy of the Consent Form.

The magistrate judge held an evidentiary hearing on the instant motion on July17, 2018, at which the government presented testimony of Bah, McCullers, Kopcsak, and police officer Ken Barber ("Barber"). The court admitted as evidence the Lease, the Consent Form, and a police evidence card. The court heard oral arguments of the parties and took the matter under advisement.

The magistrate judge entered the M&R on October 22, 2018. Defendant objected on December 19, 2018, and the government responded on January 2, 2019.

## STATEMENT OF FACTS

The court incorporates herein by reference the magistrate judge's background summary of testimony given at the suppression hearing and other evidence of record (see M&R (DE 38) at 1-6), where such summary accurately describes the evidence of record.

## COURT'S DISCUSSION

A.     Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). Section 636(b) "grants the [district] judge the broad discretion to accept, reject, or modify the magistrate's proposed findings." United States v. Raddatz, 447 U.S. 667 at 680 (1980). A "de novo determination is not necessarily the same as a de novo hearing and . . . the decision to rehear testimony is within the sole discretion of the district judge, even as to those findings based on the magistrate's judgment as to the credibility of the

witnesses before him." Proctor v. State Government of North Carolina, 830 F.2d 514, 518 n.2 (4th Cir. 1987) (internal quotations omitted). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

B. Analysis

1. Credibility

Defendant objects to the credibility determination by the magistrate judge, where the magistrate judge finds "McCullers's version of events to be more credible than Bah's," (M&R at 8), and uses Barber's testimony to corroborate McCullers's statements. (Id. at 6, 8, 14; see also id. at 11 (finding "McCullers's testimony to be more credible than Bah's"). Upon careful review of the M&R and the record in this case, the court adopts as its own the findings of the M&R with respect to credibility. The M&R thoroughly and cogently supports the magistrate judge's credibility determination in light of the testimony presented to him at suppression hearing and other evidence in the record. In addition to the reasoning of the magistrate judge, the court writes separately to augment the discussion of several factors bearing on credibility as well as issues raised in defendant's objections.

One factor supporting McCullers's credibility is the overall consistency between the version of events portrayed in his testimony, the documentary evidence, and the testimony of other officers. The court rejects the contention by defendant that differences in language used to describe bedrooms searched and sequence of arrival of other officers materially undermines McCullers's credibility. The court finds more compelling to the credibility analysis the fact that bedrooms are referenced

4

consistently in the evidence and officers' testimony as part of the initial consent to search, whereas the kitchen limitation suggested in Bah's testimony is not. (See McCullers Rep. (DE 22-3) at 2; Tr. 45, 57-59, 66, 90, 100-101, 107, 110).

Another factor supporting a finding of credibility of McCullers's statements describing scope of search is their consistency with the layout off the apartment and evidence about positioning of McCullers and Bah during the search. It is consistent with McCullers's account of events that the bedrooms in the apartment are located near the entryway, whereas the kitchen is located further to the interior of the apartment beside the living room. (See DE 22-5; Tr. 58, 62). Moreover, McCullers's account of initial consent to search the bedrooms is consistent with evidence that Bah showed McCullers into the master bedroom and directly identified currency in defendant's bedside table. (See McCullers Rep. at 2; Tr. 62, 97; see also Tr. 21 (Bah testimony)).

In addition, McCullers's account of events is consistent with evidence that Barber proceeded to a search of bedroom 2, while McCullers and Bah waited in the living room, and then Bah consented to entire search after Barber showed her cocaine found in bedroom 2. (See McCullers Rep. at 2; Tr. 49, 62, 64, 84, 90, 95, 102, 112-113; see also Tr. 15 (Bah testifying that an officer "came from the back, the backside of the apartment," and showed her a bag or a shoe). If Bah had agreed to have officers search only in the kitchen, and had not wanted officers searching in the bedrooms, it is reasonable to infer she would have objected to the scope of the initial search. See United States v. Jones, 356 F.3d 529, 534 (4th Cir. 2004) ("A failure to object to the breadth of the search is properly considered an indication that the search was within the scope of the initial consent."). Likewise, the fact that Bah signed an unqualified written Consent Form, (DE 26-3), tends itself to show officers did not exceed initial limitations of consent.

5

Furthermore, McCullers's narrative and testimony is more cogent and direct in comparison to Bah's testimony, which contains more equivocation, in-filling, and backtracking, a factor that the magistrate judge particularly was well suited to weigh in hearing the testimony first-hand. (See, e.g., Bah's testimony at Tr. 22 ("I'm not too sure"); 23 ("It's hard to - - I don't remember"); 28 ("I don't recall word for word"); 27 ("I don't remember what I did or say"); 28 ("I don't remember. I don't recall. No. I don't know."); 30 ("I don't remember if he read it to me or not"); 30-31 ("I'm not sure . . . I don't remember. I don't know. I don't actually remember saying search everywhere. I don't know if I did or not. I really don't remember that."); 31 ("I don't remember saying search everywhere. I could have. I don't know."); 32 ("I don't remember talking about search anymore after that.").

Similar factors support determination to find not credible Bah's account of threats made prior to execution of the consent form, and more credible the account of McCullers. In particular, Bah suggested in her testimony that McCullers told her if she did not sign a consent form, officers would get a warrant, "kick the door in" with SWAT team and dogs, get Bah arrested and lose her child. (Tr. 26-27). By contrast, McCullers denied making such statements in his testimony. (Tr. 48). He described instead the steps in which discussion of Bah's consent progressed from the master bedroom, to the other bedrooms, to using the consent form, and then giving full consent. (Tr. 45-49). As with the other aspects of McCullers's testimony compared to Bah's testimony, McCullers's account was consistent with his police report and the totality of the circumstances presented through other officer testimony and evidence. McCullers states in his report that he asked Bah "if she would give us consent to search the apartment," and that Bah "asked . . . about the part of the consent form that stated the limit of the search," and McCullers "advised her that she can

6

determine where we can and can't search." (McCullers Rep. at 2). The magistrate judge who observed the testimony of each reasonably discounted Bah's account based upon the manner in which she testified first on direct examination without reference to dramatic threats, and only described threats in such manner upon examination by defense counsel. It is notable, even according to Bah's account, that McCullers already was in the apartment, sitting in her living room, having been shown the master bedroom, and having a cup of water, at the time that Bah suggests McCullers made statements about kicking in the door and having a SWAT team come in. (Tr. 21-23).

Moreover, even according to Bah's account, it is not clear whether she is referring to a hypothetical situation involving a search warrant or a direct threat by McCullers to have those things take place. (E.g., Tr. 26 ("they usually come in. . . ."); id. ("if they going to have to go get a warrant and they find illicit items inside that house . . . .") (emphasis added)). Further, Bah describes at times her own end of the conversation as "I just kept rambling" and "I don't remember what I did or say." (Tr. 27). In light of all these circumstances, it is reasonable to find the testimony of McCullers more credible than the testimony of Bah concerning the events leading up to Bah's consent to search.

At bottom, the court rejects defendant's suggestion that if the court is faced with testimony by two witnesses (here McCullers and Bah), both of which contain inconsistencies, then both should be found not credible leading to a failure by the government in its burden of proof. There are varying degrees in which testimony of McCullers and Bah intersect with each other and the other evidence in the record, and the court has determined the most credible account of the facts from all the evidence in the record. It is well within the province of the court, particularly with proposed findings of the magistrate judge who hears the testimony at issue, to determine from the totality of

7

the circumstances that one version of events is more credible than the other and that such version supports, by a preponderance of the evidence, the government's assertion of a consented search.

    2.    Authority to Consent to Search of Bedroom 2

Defendant objects to the magistrate judge's determination that Bah had common authority to consent to search Bedroom 2.

"Searches undertaken with the consent of one with dominion over the property are a well recognized exception to the warrant requirements of the Fourth Amendment." United States v. Carter, 569 F.2d 801, 803 (4th Cir. 1977). "Common authority is not implied from a mere property interest, but on mutual use so that it is reasonable to recognize that a co-user had the right to permit the inspection and that the individual affected has assumed the risk that the other might consent to a search." Id. at 803-04. Common authority "requires evidence of mutual use by one generally having joint access or control for most purposes." United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007). In addition, "as long as the facts available to the officer at the moment warrant a person of reasonable caution in the belief that the consenting party had authority, apparent authority to consent exists, and evidence seized or searched pursuant to that consent need not be suppressed." Id. at 555.

Here, a preponderance of the evidence demonstrates that Bah had both actual and apparent authority to consent to search Bedroom 2. Bah executed the lease for the apartment. (Lease (DE 26-1)). Bah was married to defendant. (McCullers Rep. (DE 22-3) at 1). Bah already had demonstrated to officers that she had dominion over other areas used by defendant in the apartment, by showing McCullers currency in defendant's bedside table. (Id. at 2). The fact that Bedroom 2 was a room that defendant "spends a lot of time in," (Tr. 59), does not defeat Bah's common

authority to consent to search the room. While defendant contends it is significant that most of the contents of Bedroom 2 belonged to him, Bah also used the file cabinet inside Bedroom 2. (Tr. 34). In addition, Bah referred to Bedroom 2 as a "guest bedroom" and a room that "nobody spent time in" (Tr. 34-35). In light of all these circumstances, Bah had both actual and apparent authority to consent to search Bedroom 2.

      3.     Authority to Consent to Search of File Cabinet

Defendant objects to the magistrate judge's determination that Bah had common authority to consent to search the file cabinet in Bedroom 2. "Although common authority over a general area confers actual authority to consent to a search of that general area, it does not automatically extend to the interiors of every discrete enclosed space capable of search within the area." Buckner, 473 F.3d at 554. Nevertheless, "when a suspect gives his general and unqualified consent for an officer to search a particular area, the officer does not need to return to ask for fresh consent to search a closed container located within that area." Jones, 356 F.3d at 534. "General consent to a search permits the opening of closed but unlocked containers found in the place as to which consent was given." Id. (quotations omitted).

Here, Bah's consent to search Bedroom 2 extended to the contents of the file cabinet in Bedroom 2. Bah testified that both she and defendant kept items in the filing cabinet in Bedroom 2. (Tr. 34). This, combined with the evidence set forth above regarding consent to search Bedroom 2, provided common authority to search the file cabinet, as well as apparent authority. While defendant points to testimony that the file cabinet had a key, there is no evidence that it was locked. (See Tr. at 35). Moreover, defendant's reliance upon Reeves v. Warden, Maryland Penitentiary, 346 F.2d 915 (4th Cir. 1965), is unavailing, where "the room in question and the bureau in it [had] been

9

set aside exclusively for [the defendant's] regular use," id. at 925 (emphasis added), contrary to the evidence here of joint use.  (See, e.g., Tr. 34-35; 59; McCullers Rep. at 2).

    4.      Duress

Defendant objects to the determination by the magistrate judge that Bah was not under duress at the time she gave consent to search the apartment.

"Consent to search is valid only if it was knowing and voluntary and courts assess validity based on the totality of the circumstances."  Trulock v. Freeh, 275 F.3d 391, 401 (4th Cir. 2001) (quotations omitted).  "[T]he burden is on the Government to prove the voluntariness of an individual's consent."  Id.  "[S]earch and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search, uncontaminated by any duress or coercion, actual or implied."  United States v. Vickers, 387 F.2d 703, 706 (4th Cir. 1967).

"[I]f under all the circumstances it has appeared that the consent was not given voluntarily – that it was coerced by threats or force, or granted only in submission to a claim of lawful authority – then we have found the consent invalid and the search unreasonable."  Schneckloth v. Bustamonte, 412 U.S. 218, 233 (1973).  "In viewing the totality of the circumstances, it is appropriate to consider the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of officers present; and the duration, location, and time of the encounter)."  United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996).  "Whether the accused knew that he possessed a right to refuse consent also is relevant in determining the voluntariness of consent."  Id.

Here, the government demonstrated by a preponderance of the evidence that Bah's consent to search was voluntary, without duress or coercion. There are a number of factors, considering the totality of the circumstances, that bear on this determination. First, Bah was approached in her vehicle by a single officer, McCullers, who engaged with Bah in a conversational manner. (McCullers Rep. (DE 22-3) at 1; Tr. 44). Second, McCullers did not demand entry into the apartment, but suggested entry due to Bah's symptoms and pregnancy, and Bah entered the apartment of her own accord and motioned for McCullers to come inside. (McCullers Rep. at 2; Tr. 44). Third, Bah and McCullers engaged in discussion both outside and inside the apartment confirming that Bah's husband, not Bah, was the subject of investigation. (McCullers Rep. at 2). Fourth, while Bah initially exhibited difficulties with her symptoms and crying, Bah presented as an intelligent, professional woman, who engaged officer McCullers in questions "about what was going on with her husband." (Id.). Fifth, the discussion regarding consent to search was held in a setting, Bah's living room, where Bah was free to move about, and to get a glass of water. (McCullers Rep. at 2; Tr. 49). Sixth, Bah of her own accord got up and showed McCullers into the master bedroom to show McCullers where some of defendant's money was kept. (McCullers Rep. at 2; Tr. 45, 71). These circumstances regarding the setting of the consent in themselves strongly support a determination that consent to search by Bah was voluntary.

Moreover, in combination with the foregoing, it is also significant to demonstrating voluntary consent that Bah initially gave only partial consent and that officers explained the concept of partial consent. (McCullers Rep. at 2). Furthermore, it is significant to the voluntary nature of the consent that Bah signed the written consent form, which states "I am giving my consent to search

11

knowingly and voluntarily. No threats or promises have been made to me." (Consent Form (DE 26-3)).

Defendant, by contrast, urges the court to rely upon Bah's testimony suggesting that officers threatened to kick down her door, enter the apartment with a SWAT team, bring in dogs, take her to jail, and separate her from her baby. For the reasons discussed, above, however, the court, including upon adoption of the magistrate judge's findings, does not find this testimony credible. In light of all the evidence of record, the court finds credible McCullers's testimony and report regarding the setting and nature of conversation with Bah regarding consent to search the apartment. Defendant also points to Bah's testimony about the stress and fear about the health of her baby, feeling sick, missing an appointment, and causing a scene in the neighborhood. These factors, however, in light of all the circumstances described above, do not render the consent given involuntary. In sum, based upon a preponderance of the evidence, the court finds that Bah's consent to search, memorialized in writing and orally, was valid.

The court has considered de novo the remaining objections raised by defendant, and finds them to be without merit.

## CONCLUSION

Upon de novo review of the M&R, and upon considered review of the record and defendant's objections, the court overrules defendants objections and ADOPTS as its own the findings and recommendations of the magistrate judge (DE 38). Accordingly, defendant's motion to suppress (DE 22) is DENIED.

SO ORDERED, this the 25th day of January, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge